# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISCHINA HYDRICHE** | ) | |
| **MOUNDZOLO MOUKONO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-891-SLP** |
| | ) | |
| **ROBERT CERNA,** | ) | |
| **Acting Field Office Director, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Chrischina Hydriche Moundzolo Moukono, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] Chief United States District Judge Scott L. Palk referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 10, and Petitioner has replied, Doc. 11. So, the matter is at issue.

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order her immediate release.

## I.   Factual background and procedural history.

Petitioner is a citizen of the Central African Republic who entered the country on or about June 9, 2024, after she escaped from sex traffickers. Doc. 1, at 18-19; Doc. 10, at 10 (citing Ex. 1).[3] On June 10, 2024, the Department of Homeland Security (DHS) placed her into removal proceedings through the issuance of a Notice to Appear (NTA), which charged her as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[4] Doc. 10, at 10 & Ex. 1 at 1. She was released that same day on an Order of Release on Recognizance. Doc. 10, at 10 & Ex. 2.

On August 16, 2024, Petitioner filed an Application for Asylum and Withholding of Removal. *See* Doc. 10, at 10 (citing Ex. 3). Immigration and Customs Enforcement (ICE) detained her on February 18, 2026, during a

---

[3]   Respondents state Petitioner is a citizen of South Africa. Doc. 10, at 10 & Ex. 1.

[4]   This section is codified in the United States Code at 8 U.S.C. § 1182(a)(6)(A)(i). Section 1182(a)(6)(A)(i) provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i).

routine check-in and transferred her to the Diamondback Correctional Facility, where she remains detained. Doc. 1, at 19; Doc. 10, at 11. She sought a bond hearing, but the Immigration Judge (IJ) denied it due to a lack of jurisdiction. Doc. 1, Ex. 2, at 13.

The Director for the Administration of Children and Families recognized Petitioner as having been "subjected to a severe form of trafficking." Doc. 1, Ex. 2, at 23 (dated Jan. 7, 2025). As a result, Petitioner applied for a T Visa (for victims of severe trafficking). *Id.* at 24-25.

On June 12, 2026, an IJ granted Petitioner's application for asylum. Doc. 12, Ex. 1. The Government plans to appeal the decision and does not intend to revisit Petitioner's detention while the appeal is pending. *See* Doc. 14.

## II.    Petitioner's claims.

Petitioner raises five grounds for relief:

(1)    Violation of the INA;

(2)    Violation of Respondents' implementing regulations;

(3)    Violation of the Fourth Amendment;

(4)    Violation of the retroactivity doctrine;

(5)    Violation of the Fifth Amendment's Due Process Clause, because of the categorical denial of her right to an individualized hearing.

Doc. 1, at 61-64. Petitioner states that she has no criminal history and has complied with all reporting requirements and conditions of her release. *Id.* at 20. She asks for her immediate release, or, in the alternative, a prompt individualized bond hearing; declaratory judgment under 28 U.S.C. § 2201, declaring that noncitizens who entered without inspection who are encountered in the interior long after their entry who are placed in removal proceedings and are not described in § 1226(c) or 8 C.F.R. § 1003.19(h)(2), are entitled to a bond hearing before a neutral adjudicator; issuance of an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;[5] and an award of attorney's fees under and costs under the Equal Access to Justice Act ("EAJA"). *Id.* at 64.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are

---

[5]    The Court addressed this request when it ordered a Response, Doc. 8, so the request is moot.

properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.   Discussion.

### A.   8 U.S.C. § 1226 governs Petitioner's detention.

Petitioner asserts that Respondents violated the INA by detaining her under the mandatory detention provision in 8 U.S.C. § 1225(b)(2).[6] Doc. 1, at 61-62. Petitioner entered the country over two years ago, so she is not subject to § 1225(b)(2)(A)'s mandatory detention requirement. *See Quiroz v. Mullin,* --- F.4th ----, 2026 WL 1876709, at *5 (10th Cir. June 30, 2026) (holding "that noncitizens who entered the United States and . . . [are] thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)."); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are

---

[6]   Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").[7]

The Court should therefore at least grant Petitioner's request for a "prompt bond hearing under [] § 1226(a)." *Munoz v. Grant*, No. CIV-26-544-D, 2026 WL 1078862, at *2 (W.D. Okla. Apr. 20, 2026); *see, e.g.*, *Colin v. Holt,* No. CIV-25-1189-D, 2025 WL 3645176, at *6 (W.D. Okla. Dec. 16, 2025) ("Petitioner has not received a bond hearing and Respondents raise no objection challenging their obligations to provide bond hearings for noncitizens that are detained under 8 U.S.C. § 1226(a).").

### B.     Petitioner's due process claim.

In Ground V, Petitioner asserts that Respondents have violated her due process rights by revoking her release and re-detaining her without a bond hearing. Doc. 1, at 64. "The Fifth Amendment's Due Process Clause forbids the

---

[7]     Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A)).

Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether she has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of her protected status when ICE detained her and placed her into custody.

8

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending nearly two years in the United States before her present detention. By initially releasing Petitioner on her own recognizance under § 1226(a), the Government necessarily determined that she was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). The Government recognized Petitioner was a victim of severe human trafficking. Doc. 1, Ex. 2, at 23. Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for nearly two years following the issuance of her NTA, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During her release, Petitioner's interest in release grew even stronger as she presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

9

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where she was detained without notice or a hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of her release was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether she posed a risk of flight or danger is low. *Saqib*, 2026

10

WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for nearly two years.

## C.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown

11

to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned finds that the misapplication of the INA and the ongoing violation of Petitioner's due process rights require her immediate release subject to the same conditions of her earlier release.[8] This view is shared by numerous courts across the country.[9]

---

[8]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. But those cases do not examine the effect of a successful asylum petition or a "clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[9]    *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

### D.    The Court should decline to address Petitioner's remaining claims.

Given the undersigned's recommendation as to the disposition of Petitioner's INA and due process claims, the undersigned recommends the Court decline to address the merits of Petitioner's Fourth Amendment claim arising from Petitioner's warrantless arrest. Doc. 1, at 63. The Court should also decline to address Petitioner's claim under the retroactivity doctrine as the undersigned has determined the Government's interpretation of § 1225(b)(2)(A) is incorrect. *Id.*; *see, e.g.*, *Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim.").[10]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas petition and **order Respondents to immediately release her from custody.**[11] **The undersigned also**

---

[10]    As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

[11]    Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate

**recommends that the Court order Respondents to certify compliance with the Court's order by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 9, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[12]

---

for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2024, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that she should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

[12] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus

The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 6th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").